## HOME OWNERS' LOAN CORPORATION ET AL. *vs.* SEARS, ROEBUCK AND COMPANY ET AL.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 2d—decided July 22d, 1937.

234

*Charles Samenow,* with whom was *James L. De-Lucia,* for the appellant (defendant Sears, Roebuck & Company).

*W. Parker Seeley,* for the appellees (plaintiffs).

MALTBIE, C. J. The determinative facts in this action, giving the appellant the benefit of such material corrections in the finding as it is entitled to have made and omitting much of the detail, are as follows: Michael DeDonato owned a piece of land on Huntington Road in Bridgeport which was subject to three mortgages. Two of these had come into the possession of the American Bank and Trust Company, of which George N. Foster was receiver, and the other was owned by the Fields Mortgage and Realty Company. DeDonato applied to the Home Owners' Loan Corporation for help in refinancing these obligations. He also owned a piece of property on Reservoir Avenue in Bridgeport, which was subject to a mortgage to the defendant Sears, Roebuck & Company, hereinafter called the defendant. Its attorney tried to secure a quitclaim deed of this property from DeDonato but failed. He learned that DeDonato owned the Huntington Avenue property and, examining the title, discovered the three mortgages upon it. He also learned that DeDonato was negotiating with the Loan Corporation with reference to that property. In order to put the defendant in a position where it might obtain consideration from DeDonato with reference to its claims upon him but without thought that anything

could be realized for it through the refinancing by the Loan Corporation, the attorney began foreclosure proceedings upon the mortgage upon the Reservoir Avenue property, claimed a deficiency judgment, and to secure it made an attachment upon the Huntington Avenue property, filing the requisite certificate upon the land records. Thereafter the Loan Corporation caused the title of that property to be searched by a title company but that company did not discover or report to the corporation the existence of the defendant's attachment.

An arrangement was entered into between the Loan Corporation, DeDonato and the holders of the mortgages upon the property, Foster, receiver, and the Realty Company, wherein the Loan Corporation agreed to take a mortgage on the property, which was to be the first incumbrance upon it, the sum secured to represent certain cash payments on account of the expenses of the transaction, to discharge certain overdue taxes, and to pay small sums on the mortgages held by Foster, receiver, and the Realty Company, and also certain bonds to be issued to Foster, receiver, as holder of the first mortgage, and to the Realty Company; Foster was to accept the cash paid to him and the bonds in satisfaction of the two mortgages he held and give releases of them; and the Realty Company was to accept a small sum in cash and a bond of the Loan Corporation and take a new mortgage for about the amount then due on its original mortgage, the new mortgage to be a second mortgage on the property, and it was to release its existing mortgage. This agreement was carried out and the various conveyances were made and recorded. Thereafter the attorney for the defendant again examined the record and found that his attachment lien as far as appeared thereon, had become the first incumbrance

upon the property. He knew that a mistake had been made in the refinancing by the Loan Corporation of the incumbrances upon the property, but without communication with it, the Realty Company or the Title Company, he proceeded with the foreclosure action. He secured a deficiency judgment and at that time he did inform a representative of the Realty Company of the existence of his attachment. Thereafter he filed a judgment lien against the Huntington Avenue property based upon the attachment he had made upon it.

The filing of the releases of the mortgages held by Foster, receiver, and the Realty Company had the effect upon the land records of making the judgment lien of the defendant, which related back to the filing of the certificate of attachment, the first incumbrance upon the property. On the other hand, if the mortgage to the Loan Corporation and the new mortgage to the Realty Company have preference over the judgment lien, the amount of the incumbrances prior to it will be substantially less than the amount due upon the three mortgages and for taxes which were prior to the attachment before the transaction with the Loan Corporation went through. Upon the basis of these facts the plaintiffs, the Loan Corporation and the Realty Company, sought equitable relief of various kinds, designed at least to secure a decree establishing their mortgages as incumbrances upon the property prior to the judgment lien of the defendant. The trial court gave judgment that the mortgage of the Loan Corporation was the first mortgage upon the property and that of the Realty Company the second mortgage, so far as the defendant was concerned, and that its judgment lien was subordinate to these two mortgages. From this decree the defendant has appealed.

In numerous cases it has been held that one who advances money to discharge a prior lien on real or personal property and takes a new mortgage as security is entitled to be subrogated to the rights under the prior lien against the holder of an intervening lien of which he was ignorant. Note, 70 A. L. R. 1396. It would be surprising if among the many decisions involving the application of this principle there should not be some disagreement, particularly as this branch of the law has been rather rapidly developing. We do not understand the defendant broadly to question that the doctrine of subrogation may apply in such a case, but it relies upon certain elements in the situation before us which it claims preclude its application here. The best method of approach to the case before us is by a consideration of the particular contentions it makes.

In the first place, the defendant contends that the plaintiffs are in the position of mere volunteers as regards the discharge of the original mortgages. If that were so, they would not be entitled to relief. *Johnston* v. *Moeller*, 93 Conn. 590, 594, 107 Atl. 566; *Erickson* v. *Foote*, 112 Conn. 662, 666, 153 Atl. 853. But the plaintiffs acted in pursuance of an agreement between all the parties concerned which involved a request by DeDonato, implied if not express, that the Loan Corporation would furnish the means to discharge the mortgages held by Foster, as receiver, and in part that of the Realty Company, and that the latter would make it possible to carry out the agreement by releasing its original mortgage, and under the agreement the plaintiffs were to acquire rights against the property. They are not to be regarded as volunteers and the great weight of authority, particularly among the later cases, so holds: *Title Guarantee & Trust Co.* v. *Haven*, 196 N. Y. 487, 495, 89 N. E. 1082; *Emmert*

v. *Thompson,* 49 Minn. 386, 392, 52 N. W. 31; *Federal Land Bank of Springfield* v. *Smith,* 129 Me. 233, 237, 151 Atl. 420; *Simon Newman Co.* v. *Fink,* 206 Cal. 143, 146, 273 Pac. 565; *Stephenson* v. *Grant,* 168 Ark. 927, 930, 271 S. W. 974; *Home Savings Bank* v. *Bierstadt,* 168 Ill. 618, 625, 48 N. E. 161; *Kent* v. *Bailey,* 181 Iowa, 489, 499, 164 N. W. 852; *Industrial Trust Co.* v. *Hanley,* 53 R. I. 180, 165 Atl. 223.

The defendant further contends that subrogation in such a case as this can be allowed only where the person seeking to take advantage of the doctrine is either under an obligation to discharge the debt or where there is an agreement that he shall have the benefit of the security to the right to which he claims to succeed. There is authority to support this contention, but for the most part it represents an older view which has been modified in the course of the development of the doctrine. We do not take a narrow view of that doctrine. "Subrogation is a doctrine which equity borrowed from the civil law and administers so as to secure justice without regard to form or mere technicality. Story's Eq. Juris. (Vol. 2, 14th Ed.) § 706, says: 'It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter.' It is a legal fiction through which one who, not as a volunteer or in his own wrong and where there are no outstanding and superior equities, pays the debt of another, is substituted to all the rights and remedies of the other, and the debt is treated in equity as still existing for his benefit. Article by Mr. Creason, in 54 C. L. J. 42. This doctrine is not static, but so elastic as to take within its remedy cases of first instance which fairly fall within it and secure its primary object by compelling payment of a debt by him

who ought in equity and good conscience to pay it. Equity seeks by this action, as it does by that for reimbursement, contribution and exoneration, to prevent the unearned enrichment of one party at the expense of another, 'by creating a relation somewhat analogous to a constructive trust, in favor of the subrogee, or party making the payment, in all legal rights held by the creditor.' 5 Pomeroy, Eq. Rem. (2d Ed.) § 2343." *First Taxing District* v. *National Surety Co.*, 97 Conn. 639, 642, 118 Atl. 96. In that case we held that a taxing district was subrogated to the rights of creditors and distributees of an estate against the surety of an administrator who had paid them with funds embezzled by him from the district. In *Paton* v. *Robinson*, 81 Conn. 547, 71 Atl. 730, we held that the purchaser of an invalid but supposedly good title, who as part consideration furnished money to remove a mortgage upon the property was subrogated to the rights of the mortgagee.

There is no more reason to deny that the person claiming subrogation should have the benefit of the security because there is not an agreement to that effect than there would be in the absence of some agreement for equity to refuse to enforce a constructive trust or to deny the right of the assignee of a debt to have the benefit of the security given for it. *Second National Bank of New Haven* v. *Dyer*, 121 Conn. 263, 269, 184 Atl. 386. The terms of the agreement between the parties might prevent the application of the remedy; *Acer* v. *Hotchkiss*, 97 N. Y. 395, 403; *Capen* v. *Garrison*, 193 Mo. 335, 341, 92 S. W. 368; but the subrogation does not depend upon an agreement that the person claiming it should have the benefit of the security. The question here is whether in equity and good conscience the plaintiffs are entitled to priority in order to secure to them the

benefit which at least between the parties to the transaction it was agreed they should have. *Capen* v. *Garrison,* supra; *Stowers* v. *Wheat,* 78 Fed. (2d) 25, 30; *Catskill National Bank* v. *Dumary,* 206 N. Y. 550, 559, 100 N. E. 422.

Certain other of the defendant's contentions revolve about the fact that its certificate of attachment was on record when the plaintiffs took their mortgages and that consequently they had constructive notice of it. In the first place, recognition of the application of the principle of subrogation in this case would not violate the policy of this State that all persons dealing with real estate are entitled to rely upon the land records as disclosing the true state of the title to land; for it is a corollary to that principle that one who has actual notice of equitable rights not of record is nevertheless bound to recognize them. *Andretta* v. *Fox New England Theatres, Inc.,* 113 Conn. 476, 156 Atl. 838; *Kulmacz* v. *Milas,* 108 Conn. 538, 542, 144 Atl. 32; *New York, N. H. & H. R. Co.* v. *Russell,* 83 Conn. 581, 594, 78 Atl. 324. The defendant through its attorney not only knew before it filed its certificate of attachment that DeDonato was negotiating with the Loan Corporation for its assistance in refinancing the obligations upon the property, but it also knew before it took any steps to secure the deficiency judgment in its foreclosure action against the Reservoir Avenue property, that a mistake had been committed by the parties in proceeding with the transaction in disregard of its lien. It cannot avoid the equitable rights of the plaintiffs with knowledge of which it was chargeable merely because its lien became upon the face of the record a first incumbrance upon the property due to the discharge of the incumbrances which had had priority over it.

A more serious question, growing out of the fact

that the certificate of attachment was on record, concerns the effect upon the plaintiffs' rights of the constructive notice they thereby had of it when they took the mortgages involved in this action. If they were seeking relief of such a nature that a unilateral mistake was an essential element in their cause of action it might well be that the constructive notice they had of the defendant's lien would stand in the way. *Beach* v. *Osborne,* 74 Conn. 405, 50 Atl. 1019. Subrogation is, however, a remedy which equity gives to aid in the enforcement of a right either legal or equitable and if there is a right the application of the remedy does not require the existence of any other ground of equitable relief. Moreover, the question whether the remedy can be applied primarily concerns only the creditor, the debtor and the person claiming to be subrogated. 5 Pomeroy, Equitable Jurisprudence (2d Ed.) § 2349. This is well illustrated by the very frequent situation which is presented where a surety pays the debt of his principal and becomes subrogated to any rights the creditor may hold for the enforcement of the debt. 21 R. C. L. 1106. So in the case before us the primary question is, have the plaintiffs a right to assert the priority which the original mortgagees had before the transaction now in question as regards the parties to that transaction. If they had that right, the effect of its assertion as regards the defendant presents a secondary question.

All the parties to the transaction intended that the plaintiffs' mortgages should become the first and second incumbrances upon the property and all acted upon a misconception of the true situation, in that the defendant's lien was overlooked. Unless the constructive notice of the attachment which the plaintiffs had defeats their rights, the intent of the parties should be effectuated, provided this will work no in-

equity to the defendant. *Home Savings Bank* v. *Bierstadt,* supra, p. 625. Whether or not a plaintiff will be barred of remedy in equity against the effect of a mistake because of his negligence depends to a large extent upon the circumstances of the particular case. 2 Pomeroy, Equity Jurisprudence (4th Ed.) p. 1748. In *McCusker* v. *Spier,* 72 Conn. 628, 633, 45 Atl. 1011, we held that a party was not debarred of equitable relief because of his failure to read a deed, stating: "He was negligent, but it cannot be said that the pleadings put him in a position of one whose negligence amounts to a violation of his known duty to the adverse party." In *Geremia* v. *Boyarsky,* 107 Conn. 387, 391, 140 Atl. 749, we quoted from 2 Pomeroy, Op. Cit. (4th Ed) p. 1749, as follows: "The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby."

The presumption that one taking a mortgage upon land knows of all prior incumbrances of record affecting it certainly is no stronger than the presumption that one knows the law which determines his rights, yet relief may be given in equity against mistakes of law. *Tiernan* v. *Savin Rock Realty Co.,* 115 Conn. 473, 482, 162 Atl. 11; *Park Brothers & Co., Ltd.* v. *Blodgett & Clapp Co.,* 64 Conn. 28, 33, 29 Atl. 133. In *Bronson* v. *Leibold,* 87 Conn. 293, 87 Atl. 979, we gave relief where the plaintiff had quitclaimed to his vendor the interest he had in certain land because of a contract of purchase under the mistaken belief shared by the vendor that he had as matter of law forfeited his rights under the contract. The misconception under which the plaintiffs acted was one common to

DeDonato and the holders of the released mortgages and the relief sought can in no way prejudice their rights. The situation is not one where the intention of all the parties should be defeated because the plaintiffs acted in disregard of the defendant's lien, of which they had constructive notice. *Federal Land Bank of Springfield* v. *Smith,* supra, 237; *Fifield* v. *Mayer,* 79 N. H. 82, 85, 104 Atl. 887; *Hill* v. *Ritchie, Flynn and Hanson,* 90 Vt. 318, 322, 98 Atl. 497; *Industrial Trust Co.* v. *Hanley,* supra; *Louisville Joint Stock Land Bank* v. *Bank of Pembroke,* 225 Ky. 375, 381, 9 S. W. (2d) 113; *Home Savings Bank* v. *Bierstadt,* supra.

The plaintiffs would not be entitled to the remedy they seek if that would work inequity to the defendant. *Orvis* v. *Newell,* 17 Conn. 97, 101; *Federal Land Bank of Springfield* v. *Smith,* supra; *Louisville Joint Stock Land Bank* v. *Bank of Pembroke,* supra, p. 380; *Richards* v. *Griffith,* 92 Cal. 493, 496, 28 Pac. 484. In the instant case the only steps the defendant took after the recording of the plaintiffs' mortgages were to proceed with its foreclosure action involving the Reservoir Avenue property, take judgment therein and file its judgment lien. It did this, as we have pointed out, with full knowledge of the situation with reference to the transaction resulting in the plaintiffs' mortgages, and although it knew that that transaction had been carried out under a mistake it took no steps to call the matter to the plaintiffs' attention until the hearing upon its application for a deficiency judgment. If the plaintiffs are subrogated to the rights of priority which the holders of the released mortgages had, the result would be that the total incumbrances upon the property prior to the defendant's lien would be less in amount than the three mortgages which were upon it at the time it filed its certificate of attachment. Under these circumstances it cannot claim that the

grant of the right of subrogation to the plaintiffs would work an inequity to it. *Atwood* v. *Vincent*, 17 Conn. 574, 582; *Federal Union Life Ins. Co.* v. *Deitsch*, 127 Ohio St. 505, 189 N. E. 440; *Ingram* v. *Jones*, 47 Fed. (2d) 135, 139; *Stephenson* v. *Grant*, supra, p. 930; *Farm Land Mortgage & Debenture Co.* v. *Elsbree*, 55 Kan. 562, 568, 40 Pac. 906; *Bankers Loan & Investment Co.* v. *Hornish*, 94 Va. 608, 612, 27 S. E. 459; *Enterprise Bank* v. *Federal Land Bank of Columbia*, 139 S. C. 397, 408, 138 S. E. 146; *Bormann* v. *Hatfield*, 96 Wash. 270, 274, 164 Pac. 921.

The fact that the original mortgages were, in the contemplation of the parties to them, satisfied and formally released does not stand in the way of equitable relief. To be sure, in an action at law, such releases might preclude the rights of the original mortgagees or of the plaintiffs standing in their shoes to assert any title to the premises, but the primary question here is one between these parties and DeDonato and unless, as between them, equity is barred from giving relief the defendant cannot complain. In fact the very basis of the relief in such a case is that the original mortgages have been paid by those who are seeking subrogation. 5 Pomeroy, Op. Cit. (2d Ed.) § 2349. Equity can always look behind the technical legal title if necessary to work out under its principles the rights of the parties. Thus in the execution of the principle that once a mortgage always a mortgage, equity will look behind the legal title and if necessary determine the rights of the parties in disregard of it. *Lounsbury* v. *Norton*, 59 Conn. 170, 177, 22 Atl. 153. So where there is a mistake of the parties of such a nature that equity can give relief, it will not hold its hand because a formal conveyance stands in the way. *Bronson* v. *Leibold*, supra. In the instant case all parties to the transaction resulting in the plaintiffs' mortgages mis-

takenly supposed that the effect was to make those mortgages the first and second incumbrances upon the land. If that mistake was one against which equity could relieve, that the original mortgages were formally released will not preclude a proper decree in favor of the plaintiffs. *Shields* v. *Pepper*, 218 Ala. 379, 380, 118 So. 549; *Home Savings Bank* v. *Bierstadt*, supra, p. 625; *Kent* v. *Bailey*, supra, p. 499.

The case of *Lewis* v. *Hinman*, 56 Conn. 55, 13 Atl. 143, went no farther than to hold that where the owners of a third mortgage paid a first mortgage on the property and caused a release of that mortgage to be recorded, in ignorance of a second mortgage, they could not assert any rights under the released mortgage against one who, in reliance upon the record, purchased the second mortgage, and that equity would not prevent a merger of title where there was an intent that such a merger should take place. In *Lomas & Nettleton Co.* v. *Isacs*, 101 Conn. 614, 127 Atl. 6, the question was whether or not a first mortgagee who had released his mortgage and taken a new one on the same property and a second mortgagee who had released his mortgage and taken a quitclaim deed as security for the debt, in ignorance of a third mortgage upon the property which, if the transaction stood, would be entitled to priority, might in equity have the original mortgages reinstated; we held that the plaintiffs were entitled to that relief, but were careful to restrict our decision to the particular situation before us. In *Meagher* v. *Colonial Homes Co.*, 109 Conn. 343, 348, 146 Atl. 609, we were dealing with a claim for the reinstatement of a mortgage which had been released, and we denied relief upon the ground that the plaintiff had actual knowledge of the intervening rights when the release was made and was estopped to assert a priority for the lien of the mortgage over

those rights. There is nothing in these decisions which militates against the conclusion we have reached in the case before us. On the other hand, in *Home Owners' Loan Corporation* v. *Collins*, 120. N. J. Eq. 266, 184 Atl. 621, which, as regards the questions we have discussed, is on all fours with the case before us, the same conclusions as those we have stated were reached.

The defendant makes an incidental claim, that the plaintiffs are not in any event entitled to subrogation as regards the amount paid to discharge the overdue taxes on the property and for the expenses of the transactions resulting in the giving of the new mortgages. In *Sperry* v. *Butler*, 75 Conn. 369, 53 Atl. 899, we held that a second mortgagee who had paid taxes upon the real estate could not be subrogated to the rights of the city to which they were due to collect them from the owner of the equity of redemption, stating (p. 373): "Therefore it is that, in the absence of legislation expressly or by reasonable implication authorizing the substitution of the individual for the community, the powers specially created as incidental to the exercise of the public right of taxation ought not to become delegated to private persons by judicial intervention, unless, indeed, it be in rare and extreme cases." There is nothing to prevent the application of the doctrine in the mere fact that the incumbrance to which the plaintiffs claimed to be subrogated is a tax lien, but the reason for denying it is the impropriety of permitting an individual to avail himself of remedies designed only for the use of public bodies. In the case before us, there being no question of the validity of the plaintiffs' mortgages, relief to the plaintiffs can be accomplished, not by giving to them the right to any remedies which the municipality would have to collect the taxes, but by subrogating them, to the extent to which they have contributed to the discharge

of the incumbrances originally upon the premises, to the rights of priority which pertain to those incumbrances; and these rights would attach to the mortgages now held by them, to be given effect in any proceedings to enforce those mortgages to which the defendant was a party. *Barnett* v. *Griffith*, 27 N. J. Eq. 201, 205; *First Avenue Coal & Lumber Co.* v. *King*, 193 Ala. 438, 440, 69 So. 549; *Southern Cotton Oil Co.* v. *Napoleon Hill Cotton Co.*, 108 Ark. 555, 562, 158 S. W. 1082; *Thompson* v. *Connecticut Mutual Life Ins. Co.*, 139 Ind. 325, 349, 38 N. E. 796; *Frederick* v. *Gehling*, 92 Neb. 204, 211, 137 N. W. 998; *Hill* v. *Ritchie, Flynn and Hanson*, supra, p. 323; *Huggins* v. *Fitzpatrick*, 102 W. Va. 224, 230, 135 S. E. 19.

The reasons which led us to the decision in *Sperry* v. *Butler*, supra, are not present in the case before us, and the plaintiffs are entitled to judgment that their mortgages are prior in right to the defendant's lien to the extent that they represent the sums contributed to the discharge of the original mortgages and of the taxes upon the mortgaged property. It is true that the Realty Company made no contribution in cash, but it did surrender its original mortgage and is entitled to priority to the extent that it thereby freed the property of an incumbrance upon it. As the right of priority exists only to the extent that the property was relieved of obligations which might have been asserted against it under the original mortgages and the lien for taxes, the expenditures made by the Loan Corporation in carrying through the refinancing transaction cannot be allowed. *Paton* v. *Robinson*, supra, p. 544; *Lomas & Nettleton Co.* v. *Isacs*, supra, p. 624.

The amount of the mortgages on the property issued to the plaintiffs was less than the amount of the three mortgages which were released, and that taken by the Realty Company was less than the amount which was

due upon its original mortgage when the new mortgages were made. Each of the plaintiffs is then entitled to have its mortgage declared to have priority over the defendant's judgment lien to the full amount except as to the expenditures made by the Loan Corporation in connection with the transaction. With this exception the judgment of the trial court was correct in substance. It need be modified only so far as to exclude priority of the Loan Corporation's mortgage to the extent of those expenditures.

There is error in part and the case is remanded with direction to enter judgment for the plaintiffs in accordance with this opinion.

In this opinion the other judges concurred.