## INDEPENDENCE ONE MORTGAGE CORPORATION
## *v.* THOMAS KATSAROS ET AL.
## (15535)

O'Connell, Heiman and Schaller, Js.

Argued June 6—officially released September 10, 1996

*Gerald L. Garlick*, for the appellant (plaintiff).

*Robert C. Pinciaro*, with whom, on the brief, were *Serge G. Mihaly* and *Richard G. Kascak*, for the appellee (defendant Larry Lainey).

SCHALLER, J. The plaintiff Independence One Mortgage Corporation appeals from the judgment of strict foreclosure rendered by the trial court. The plaintiff claims that, in determining that the mortgage of the defendant[1] Larry Lainey was prior in right to its mortgage, the trial court improperly failed to apply the doc-

---

[1] The defendants in this action are Thomas Katsaros, Larry Lainey, John Eoanou and Eoanou's wife.

trine of equitable subrogation. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. The dispute about priority of mortgages arose during the foreclosure action instituted by the plaintiff. The subject property was previously owned by the defendant John Eoanou. Lainey loaned Eoanou $60,000 and to secure that loan took a mortgage from Eoanou on the subject property. That mortgage was recorded on November 5, 1990, in the land records of the town of Easton subsequent to eleven other encumbrances on the property.

In 1991, Eoanou negotiated with the defendant Thomas Katsaros for the sale of the property. Prior to the closing, Eoanou, through his attorney, sought to obtain releases of all the existing encumbrances on the property. Eoanou's counsel negotiated for the payment and release of the eleven mortgages and liens prior in right to the Lainey mortgage. The eleven encumbrances were released at the closing, but the Lainey mortgage was not released.[2]

On June 11, 1991, Eoanou, by warranty deed, conveyed the property to Katsaros. The deed did not provide that it was subject to any of the existing mortgages or liens. As part of the real estate transaction, Katsaros borrowed $1,000,000 from the plaintiff and executed a mortgage deed to the plaintiff securing the loan with the subject property.

Subsequent to the transfer of property from Eoanou to Katsaros, the plaintiff instituted a foreclosure action

---

[2] The plaintiff claims that "Lainey's mortgage was not brought to anyone's attention . . . at the closing and therefore was not included in the list of lienholders that received their . . . payments." Eoanou, however, had received a $60,000 loan from Lainey just seven months prior to the closing. We will not speculate about the events that caused the Lainey mortgage to be the only encumbrance not released when Eoanou transferred the property to Katsaros.

with respect to the property. In its amended complaint, the plaintiff alleged that it had priority over the Lainey mortgage. The issue of priority of mortgages was litigated in the trial court. The trial court found that because the Lainey mortgage was properly recorded prior in time to the plaintiff's mortgage, the Lainey mortgage was entitled to priority over the plaintiff's mortgage.

The law relating to the priority of interests has its roots in early Connecticut jurisprudence. A fundamental principle is that a mortgage that is recorded first is entitled to priority over subsequently recorded mortgages provided that every grantee has a reasonable time to get his deed recorded. *Brown* v. *General Laundry Service, Inc.*, 139 Conn. 363, 372, 94 A.2d 10 (1952), vacated on other grounds, 347 U.S. 81, 74 S. Ct. 367, 98 L. Ed. 2d 520 (1954); *Beers* v. *Hawley*, 2 Conn. 467, 469 (1818).

The plaintiff recognizes that the first in time, first in right principle is applicable to this case. The plaintiff argues, however, that the doctrine of equitable subrogation should preempt that fundamental principle and place the plaintiff in the position of first mortgagee. Equitable subrogation has been applied in certain limited circumstances to rearrange the priorities of parties in a case. Any such rearrangement is based on fairness and justice. See *Connecticut National Bank* v. *Chapman*, 153 Conn. 393, 398–99, 216 A.2d 814 (1966); *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.*, 123 Conn. 232, 238–39, 193 A. 769 (1937); *Lomas & Nettleton Co.* v. *Isacs*, 101 Conn. 614, 620–21, 127 A. 6 (1924); 2 J. Story, Equity Jurisprudence (14th Ed. 1918) § 707. Our Supreme Court has stated that "[i]n numerous cases it has been held that one who advances money to discharge a prior lien on real or personal property and takes a new mortgage as security is entitled to be subrogated to the rights under the prior lien against the holder

of an *intervening* lien of which he was ignorant." (Emphasis added.) *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.*, supra, 237.

The plaintiff argues that it has satisfied the elements of equitable subrogation. The plaintiff contends that it advanced money that was used to discharge prior debts,[3] it took a new mortgage on the property as security for the advanced funds and it was ignorant of a prior lien on the property.[4] The plaintiff believes that it is entitled to be subrogated to the rights of the prior eleven lien holders and, therefore, it should be entitled to assert a priority interest over Lainey's interest.

The plaintiff neglects an important distinction in relying on *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.*, supra, 123 Conn. 232. When considering whether the doctrine of equitable subrogation can apply in a given set of circumstances, a distinction must be made between *intervening* lien holders and *existing* lien holders. In this case, Lainey was an existing lien holder, not an intervening lien holder. Lainey had recorded a mortgage lien prior to any interest of the plaintiff in the subject property. The doctrine of equitable subrogation is not intended as a means of circumventing the rights of existing lien holders who have properly recorded their mortgage instruments. "The case of

---

[3] The trial court made no finding as to precisely what Katsaros did with the money he received from the plaintiff. The plaintiff claims that the money was used to pay off the existing encumbrances on the property and that Eoanou received no money from the real estate transaction. Lainey claims that Katsaros gave the money to Eoanou and that Eoanou used the money to pay off the eleven prior encumbrances. Lainey points out that it is not uncommon for parties to use the proceeds of a sale to pay off prior encumbrances on the property. In the absence of findings by the trial court, we cannot speculate about the details of the real estate transaction.

[4] The trial court made no finding that the plaintiff was ignorant of the Lainey mortgage. Absent such a finding, we will not rely on the plaintiff's assertion that it was ignorant of the Lainey mortgage. We note that the Lainey mortgage was readily discoverable by a title search of the property.

*Lewis* v. *Hinman,* 56 Conn. 55, 13 Atl. 143 [1887], went no farther than to hold that where the owners of a third mortgage paid a first mortgage on the property and caused a release of that mortgage to be recorded, in ignorance of a second mortgage, they could not assert any rights under the released mortgage against one who, in reliance upon the record, purchased the second mortgage . . . ." *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.,* supra, 245.

The situation in which a party may assert the doctrine of equitable subrogation occurs when an intervening lien holder attempts to claim priority over a lien holder who had a prior interest in the subject property. "One of the most common mistakes connected with releases of mortgages is when the mortgage is renewed and the prior lien released in ignorance of intervening rights. Ignorance in such a case is regarded in equity as equivalent to a mistake, and relief will be granted when there is no other element of estoppel, and when the party seeking relief has not delayed action. . . . When a new mortgage is substituted in ignorance of an intervening lien, the mortgage released through mistake may be restored in equity and given its original priority as a lien." (Citation omitted; internal quotation marks omitted.) *Lomas & Nettleton Co.* v. *Isacs,* supra, 101 Conn. 620 (first and second mortgagee, who released mortgages to refinance, subrogated to priority over unknown third mortgage); see also *Connecticut National Bank* v. *Chapman,* supra, 153 Conn. 399–400 (first mortgagee, who released mortgage to refinance, subrogated to priority over unknown second mortgagee).

In this foreclosure action, the trial court properly considered the equities of the parties. "Because a mortgage foreclosure is an equitable proceeding, the trial court may consider all relevant circumstances to ensure that complete justice is done. . . . [T]he determination of what equity requires in a particular case, the

balancing of the equities, is a matter for the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Reynolds* v. *Ramos*, 188 Conn. 316, 320, 449 A.2d 182 (1982). When Lainey obtained and recorded his mortgage subsequent to eleven other lien holders, he bargained that, if the eleven encumbrances prior to his encumbrance were released, his encumbrance would become the first on the property to the extent of his interest. The plaintiff bargained that it would have priority with respect to all encumbrances that had been satisfied and released before the plaintiff's interest was recorded. In order to obtain priority over Lainey, the plaintiff merely had to satisfy Lainey's interest; otherwise, Lainey retained his priority relative to the plaintiff. The plaintiff may have desired to obtain a first mortgage on the property when it provided the money to Katsaros, but that desire cannot prevail over Lainey's established position. The trial court correctly determined that the parties were in precisely the positions for which they bargained.

The judgment is affirmed.

In this opinion the other judges concurred.