JACK L. ROSENBLIT, TRUSTEE *v.* BARBARA
WILLIAMS ET AL.
(AC 18980)

Lavery, Mihalakos and Stoughton, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued December 13, 1999—officially released May 23, 2000

*Lawrence S. Hillman,* for the appellant-appellee (plaintiff).

*Jonathan S. Bowman,* with whom was *Stuart M. Katz,* for the appellee-appellant (defendant Ford Consumer Finance Company, Inc.).

*Opinion*

STOUGHTON, J. The plaintiff, Jack L. Rosenblit, trustee, appeals from the trial court's determination of priorities in a judgment of strict foreclosure. The court determined, on principles of equitable subrogation, that a mortgage held by the defendant Ford Consumer Finance Company, Inc. (Ford), that was subsequent to certain mortgages held by the plaintiff should be given priority over the plaintiff's mortgages. On appeal, the plaintiff claims that the court improperly (1) applied the doctrine of equitable subrogation and (2) subrogated his mortgages to the entire balance of Ford's mortgage.

Ford cross appeals from the judgment for the plaintiff on its counterclaims.[2] Ford claims in its cross appeal that the court improperly failed to find that the plaintiff's conduct constituted a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

The following facts were found by the court. Barbara Williams and Ellen Woodhouse owned property at 300-302 Ridgefield Avenue in Bridgeport (property).[3] Prior to March 7, 1990, the property was encumbered by a first mortgage then held by M & T Mortgage Corporation (M & T mortgage), a second mortgage held by the Bridgeport City Employee's Federal Credit Union (Bridgeport mortgage) and a third mortgage held by the plaintiff.

On March 7, 1990, Danny R. Evans[4] and Williams, individually and as attorney-in-fact for Woodhouse, executed a promissory note in favor of the plaintiff in the amount of $25,000, secured by a fourth mortgage on the property to the plaintiff. The plaintiff has foreclosed this mortgage in this action.

On July 25, 1990, Williams, individually and as attorney-in-fact for Woodhouse, executed a promissory note in favor of the plaintiff in the amount of $10,000, secured by a fifth mortgage on the property to the plaintiff. The plaintiff has foreclosed this mortgage in this action.

---

[2] Ford and another defendant, Barbara Williams, filed counterclaims. Only Ford appealed from the judgment.

[3] Williams was a defendant at trial but did not appeal. Woodhouse also was a defendant, but because the power of attorney purportedly given by Woodhouse, by which her one-half interest in the property was mortgaged to the plaintiff, was a forgery, the court rendered judgment in her favor. The plaintiff's mortgages, therefore, pertain only to Williams' one-half interest.

[4] Evans had no ownership interest in the property, and his relationship to the parties remains unclear.

On February 17, 1995, Williams and Woodhouse borrowed $106,139.74 from Ford as evidenced by a note secured by a mortgage deed recorded on that date. Ford's loan required the payoff of the M & T mortgage, the Bridgeport mortgage and a sewer lien that encumbered the property. Ford was given releases of the plaintiff's three mortgages at or before the closing and assumed that it had a first mortgage on the property. The releases, however, purportedly executed in 1994, were forgeries, as stipulated by the parties at trial. In addition, the parties have stipulated that the power of attorney under which Williams purported to act for Woodhouse was a forgery and that the mortgages to the plaintiff did not encumber the Woodhouse one-half interest in the property. Williams received only $1162.50 of the proceeds of the $25,000 loan, the balance either having been paid to Evans or retained by the plaintiff. Williams received no part of the $10,000 loan. The plaintiff testified that each mortgage went into default within one month of their making in 1990 and that he received only $250 on the $10,000 loan.

After Ford paid off all the prior encumbrances on the property, the plaintiff filed a complaint in 1996 seeking to foreclose the fourth and fifth mortgages. The complaint alleged that Ford's mortgage and a Sears, Roebuck & Co. lien were subsequent encumbrances. Ford filed an answer, ten special defenses and a five count counterclaim.[5] Ford's essential position was that its mortgage should have priority over the two mortgages that the plaintiff sought to foreclose.

The court rendered judgment in favor of Woodhouse and ordered a strict foreclosure in favor of the plaintiff against Williams' interest in the property. The court rendered judgment in favor of the plaintiff on each

[5] Williams filed an amended answer, special defenses and counterclaims that mirror the pleadings filed by Ford.

count of the defendants' counterclaims because the defendants failed to prove the facts they asserted to support any of their claims by the standard of proof required. The court also found with respect to all of the special defenses, except the fourth special defense,[6] that the defendants had failed to prove those defenses by the applicable standard of proof. With regard to the fourth special defense, the court found in favor of Ford and invoked the doctrine of equitable subrogation, giving priority to Ford's mortgage over all of the plaintiff's mortgages. Additional facts will be discussed where relevant to the issues in this case.

## I

The plaintiff claims that the court improperly applied the doctrine of equitable subrogation, thereby placing Ford's mortgage in the first priority position above all of the plaintiff's mortgages. We disagree.

"Our standard of review is whether the trial court abused its discretion. A foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Conant,* 54 Conn. App. 529, 532, 736 A.2d 928, cert. denied, 251 Conn. 909, 739 A.2d 264 (1999).

---

[6] The court in its memorandum of decision referred to the fourth special defense as the third special defense, but upon review of the special defenses, it is clear that equitable subrogation was raised in the fourth special defense.

"The object of [equitable] subrogation is the prevention of injustice." (Internal quotation marks omitted.) *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, 236 Conn. 362, 371, 672 A.2d 939 (1996). The question in this case is whether, in equity and good conscience, Ford's mortgage is entitled to priority over the plaintiff's mortgages to secure the benefit that the parties to the transaction agreed Ford should have. See *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.*, 123 Conn. 232, 239–40, 193 A. 769 (1937).

"In numerous cases it has been held that one who advances money to discharge a prior lien on real or personal property and takes a new mortgage as security is entitled to be subrogated to the rights under the prior lien against the holder of an intervening lien of which he was ignorant." Id., 237. In this case, Ford advanced money to Williams, secured by a mortgage, and a portion of the funds was used to pay off the prior encumbrances on the property. In requiring the discharge of those loans, Ford believed that it had secured its loan with a first mortgage. It was ignorant, however, of the fact that the plaintiff's mortgages had not been released.

"The intention of the parties to the transaction is the controlling consideration." *Lomas & Nettleton Co.* v. *Isacs*, 101 Conn. 614, 622, 127 A. 6 (1924). It was clear that Ford, by requiring the payoff of the prior encumbrances, bargained for and intended that its mortgage be a first mortgage on the property. See *Independence One Mortgage Corp.* v. *Katsaros*, 43 Conn. App. 71, 76, 681 A.2d 1005 (1996).

"Subrogation is a doctrine which equity borrowed from the civil law and administers so as to secure justice without regard to form or mere technicality. Story's Eq. Juris. (Vol. 2, 14th Ed.) § 706, says: It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and

which, in equity and good conscience, should have been discharged by the latter. It is a legal fiction through which one who, not as a volunteer or in his own wrong and where there are no outstanding and superior equities, pays the debt of another, is substituted to all the rights and remedies of the other, and the debt is treated in equity as still existing for his benefit." (Internal quotation marks omitted.) *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.*, supra, 123 Conn. 238.

The doctrine of equitable subrogation was designed to correct the exact situation presented in this case. The court found that "all of the [plaintiff's] loans went into default almost immediately and there is scant evidence that the plaintiff did anything to collect on them until this action in 1996," approximately six years after the defaults. If he had taken action on the loans, he would have had to list the M & T mortgage, the Bridgeport mortgage and the sewer lien as prior encumbrances on the property. It seemed clear to the court that the plaintiff did not want to acquire the property and have to pay off those encumbrances.

The court concluded that when the plaintiff discovered the existence of the forged releases and then learned that Ford had paid off all the prior encumbrances, he realized that he was in a first position over Ford and that the way was clear for him to acquire the property free of Ford's mortgage or require Ford to pay him off in full.

The plaintiff claims that he was harmed because he was left with two unpaid mortgage loans when the court placed Ford in the first position. The court concluded, however, that it appeared from the payment history that the plaintiff knew that Williams could not make payments on any of the loans.

The plaintiff's reliance on *Independence One Mortgage Corp.* v. *Katsaros*, supra, 43 Conn. App. 71, to

defeat Ford's claim for priority is misplaced. In that case, eleven of twelve prior encumbrances were released at a real estate closing when a new mortgage was executed in favor of the plaintiff. Id., 72. One recorded prior encumbrance was not released. Id. In those circumstances, the doctrine was not applicable. Id., 75–76.

In the present case, because Ford believed that the plaintiff's mortgages had been released, it paid off all of the other prior encumbrances assuming that it had a first mortgage on the property. No injustice against the plaintiff resulted from the court's application of the doctrine of equitable subrogation. Under these circumstances, we conclude that the court did not abuse its discretion in applying the doctrine of equitable subrogation.

II

Next, the plaintiff claims that even if Ford's mortgage is given priority over his mortgages, the court improperly subordinated the entire balance of the plaintiff's mortgages to Ford's mortgage. The plaintiff claims that Ford's mortgage should have priority only to the extent of $73,009.58, the total amount paid to release the prior encumbrances. On the basis of the entire record, we cannot say that the court abused its discretion.

This is an equitable proceeding, and the court found that Ford's mortgage should have the first priority position. Subsequent to issuance of the court's memorandum of decision, the plaintiff filed a motion for articulation regarding the order of priorities established by the court. The court, *Gormley, J.*, responded to the motion by ordering strict foreclosure in accordance with the memorandum of decision. The memorandum of decision, however, did not specifically state why the court determined that the plaintiff's mortgages should be subordinate to the entire balance of Ford's mortgage.

When the court issued its order in response to the plaintiff's motion for articulation, the plaintiff could have filed a motion for review pursuant to Practice Book § 66-7. The court did not explain its decision to subordinate the plaintiff's mortgages to the entire balance of Ford's mortgage, and we are left to speculate as to its reasons for doing so. It is up to the appellant to provide a record adequate to review his claims. Practice Book § 61-10. In the absence of an adequate record, we cannot conclude that the court abused its discretion. See *Silver* v. *Statewide Grievance Committee*, 42 Conn. App. 229, 235, 679 A.2d 392 (1996), appeal dismissed, 242 Conn. 186, 699 A.2d 151 (1997).

### III

Ford claims on its cross appeal that the court improperly failed to find that the plaintiff's conduct constituted a violation of CUTPA, as alleged in counts two through five of its counterclaim. We decline to review this claim.

"The burden of securing an adequate record for appellate review of an issue presented on a cross appeal rests with the cross appellant." (Internal quotation marks omitted.) *Wellington Systems, Inc.* v. *Redding Group, Inc.*, 49 Conn. App. 152, 180, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998). In its brief, Ford refers to conduct that it claims amounted to a CUTPA violation. None of that conduct was found as fact by the court. In dealing with this counterclaim, the memorandum of decision simply stated that the defendants had failed to prove the facts they asserted to support any of their claims by the standard of proof required. Because there was no motion for articulation by Ford, we are left with an inadequate record for review. See *Gladstone, Schwartz, Baroff & Blum* v. *Hovhannissian*, 53 Conn. App. 122, 127, 728 A.2d 1140 (1999).

The judgment is affirmed.

In this opinion the other judges concurred.