DEUTSCHE BANK NATIONAL TRUST COMPANY, TRUSTEE *v.* FRANCIS DELMASTRO ET AL.
(AC 33236)

Beach, Alvord and Pellegrino, Js.

Argued November 16, 2011—officially released February 21, 2012

*Gerald L. Garlick,* with whom, on the brief, was *Katherine E. Abel,* for the appellant (plaintiff).

*George J. Kelly, Jr.,* for the appellee (defendant Mary Lou DelMastro).

*Opinion*

BEACH, J. The plaintiff, Deutsche Bank National Trust Company, as trustee, appeals from the trial court's determination of priorities rendered in connection with a judgment of strict foreclosure on property owned by the defendant Francis DelMastro.[1] On appeal, the plaintiff claims that (1) the court erred by failing to apply the doctrine of equitable subrogation, (2) the court erred by failing to apply general equitable principles in order to find that the plaintiff's mortgage was prior in right to the mortgage of the defendant Mary Lou DelMastro and (3) Mary Lou DelMastro's mortgage was void for lack of consideration. We affirm the judgment of the trial court.

The following facts are undisputed. The property at issue was located at 26 Pamela Court in Tolland (property) and was owned by Francis DelMastro, a son of Mary Lou DelMastro. On February 14, 2007, Francis DelMastro obtained a loan from New Century Mortgage Corporation, which was secured by a $650,000 mortgage on the property. On or about June 15, 2007, Francis DelMastro executed a second mortgage on the property

---

[1] The defendants in this action are Francis DelMastro, Kristen DelMastro, Newgate Corporation and Mary Lou DelMastro. Mary Lou DelMastro is the only defendant who has filed a brief or appeared at oral argument.

in favor of Mary Lou DelMastro in the amount of $325,000, after she agreed to provide a mortgage on her home in Wethersfield as security for two loans Francis DelMastro had obtained from a business associate. The $325,000 mortgage was recorded on June 19, 2007, in the Tolland land records. At the time Mary Lou DelMastro obtained the $325,000 mortgage, she knew that there was a prior mortgage on the property. On or about August 6, 2007, Francis DelMastro refinanced the New Century mortgage on the property by executing a note and mortgage to Saxon Mortgage, Inc., in the amount of $749,999. The mortgage of February 14, 2007, was released on August 15, 2007. The Saxon Mortgage, Inc., mortgage was subsequently assigned to the plaintiff and is the subject of this action.

In April, 2008, the plaintiff commenced a foreclosure action against Francis DelMastro. Among those named by the plaintiff as claiming an interest prior in right was Mary Lou DelMastro. On September 15, 2008, the court rendered a judgment of strict foreclosure, setting the debt at $827,002.89, the fair market value of the property at $688,000 and law days beginning on January 12, 2009, for the named defendant and two other defendants who were subsequent encumbrancers.[2] The plaintiff thereafter filed a motion to open the judgment of strict foreclosure in order to add Mary Lou DelMastro as an additional defendant, which motion was granted by the court, *Sferrazza, J.* The plaintiff subsequently claimed in its amended complaint that Mary Lou DelMastro's $325,000 mortgage was subsequent to its mortgage pursuant to equitable subrogation. On April 7, 2009, the plaintiff moved for summary judgment on that ground. The plaintiff reasoned that through inadvertence or mistake, no one discovered or advised Saxon Mortgage, Inc., that Mary Lou DelMastro's mortgage had been

---

[2] The subsequent encumbrancers were the defendants Kristen DelMastro and Newgate Corporation.

recorded in June, 2007, and an inequitable windfall would result if the court did not apply equitable subrogation. The court, *Sferrazza, J.*, denied the motion, finding that genuine factual issues existed as to the parties' intentions and whether consideration was exchanged and that "equitable subrogation claims are usually unsuitable for resolution by summary judgment."

Subsequently, a hearing was held on the issue of the relative priority of the mortgages. On January 6, 2010, the court, *Hon. Lawrence C. Klaczak*, judge trial referee, determined that Mary Lou DelMastro held the first priority lien on the property. The plaintiff appealed from that decision. This court dismissed the plaintiff's appeal for lack of a final judgment on the ground that the appeal was taken before a new judgment of foreclosure was rendered by the court. Subsequently, on March 7, 2011, the court, *Sferrazza, J.*, granted the plaintiff's motion for a judgment of strict foreclosure, setting the law day for April 11, 2011. The court found the fair market value of the property to be $522,000 and the debt to be $1,041,455.27. It also awarded attorney's fees in the amount of $1395. On March 11, 2011, the plaintiff filed the present appeal.[3] Additional facts will be set forth as necessary.

I

The plaintiff first argues that the court erred by failing to conclude that Mary Lou DelMastro's mortgage was subsequent to its mortgage under the doctrine of equitable subrogation. We disagree.

The following additional facts are relevant. On January 6, 2010, the court, *Hon. Lawrence C. Klaczak*, judge

---

[3] The plaintiff subsequently filed a motion for articulation, in which it sought to have the trial court address the three issues before this court. The court denied the motion. The plaintiff then filed a motion for review of the court's denial of its motion for articulation. This court granted the motion for review but denied the relief requested therein.

trial referee, issued a memorandum of decision finding that Mary Lou DelMastro held the first priority lien on the property. Among the facts that the court found was that "[t]he plaintiff had a title search done on the property on or about May 30, 2007, which predated the date of Mary [Lou DelMastro's] $325,000 mortgage (June 15, 2007). The title [search] company . . . was not asked to do a bring down after its May 30th search." The court continued as follows: "The plaintiff claims its mortgage has priority over Mary Lou DelMastro's mortgage under a theory of equitable subrogation. The court disagrees for the following reasons. Mary Lou DelMastro was not shown to be complicit in any unethical or inappropriate behavior. Her son, Francis [DelMastro], was having financial problems in his business dealings. . . . Mary Lou [DelMastro] agreed to provide security [for her son's loans] by providing a mortgage to [her son's business associate] on her home in Wethersfield for the full $325,000. Ultimately . . . as guarantor, she was forced to put a mortgage on her Wethersfield home and liquidate her own savings to pay off [her son's business associate]. On June 15, 2007, Francis [DelMastro] gave Mary Lou [DelMastro] a mortgage deed and note for the $325,000 on his Tolland home. Under these facts, this court cannot see how it would be equitable to subordinate Mary [Lou DelMastro's] mortgage to [the plaintiff]. There is no evidence that Mary Lou DelMastro was neglectful, fraudulent, confused or that she acted unfairly. She is entitled to the protection of the recording statutes. See *Independence One Mortgage Corp.* v. *Katsaros*, 43 Conn. App. 71, 76, 681 A.2d 1005 (1996)."

We begin by noting that courts apply equitable subrogation sparingly. "Our review of a decision rendered in equity is limited. The determination of what equity requires in a particular case . . . is a matter for the discretion of the trial court. . . . In determining

whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did. . . .

"The law relating to the priority of interests has its roots in early Connecticut jurisprudence. A fundamental principle is that a mortgage that is recorded first is entitled to priority over subsequently recorded mortgages provided that every grantee has a reasonable time to get his deed recorded. . . . The doctrine of equitable subrogation provides an exception to the first in time, first in right rule and has been applied in certain limited circumstances to rearrange the priorities of parties in a case. . . . The object of [equitable] subrogation is the prevention of injustice. . . . Where fairness and justice require, one who advances money to discharge a prior lien on real or personal property and takes a new mortgage as security is entitled to be subrogated to the rights under the prior lien against the holder of an intervening lien of which he was ignorant." (Citations omitted; internal quotation marks omitted.) *Equicredit Corp. of Connecticut* v. *Kasper*, 122 Conn. App. 94, 96–97, 996 A.2d 1243, cert. denied, 298 Conn. 916, 4 A.3d 831 (2010). "Whether or not a plaintiff will be barred of remedy in equity against the effect of a mistake because of his negligence depends to a large extent upon the circumstances of the particular case." *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.*, 123 Conn. 232, 242, 193 A. 769 (1937). "Equity always looks to the substance of a transaction and not to mere form." *Connecticut National Bank* v. *Chapman*, 153 Conn. 393, 397, 216 A.2d 814 (1966).

To support its claim that the court should have applied equitable subrogation to find that its mortgage was prior in right to Mary Lou DelMastro's mortgage,

the plaintiff relies on *Connecticut National Bank*. Specifically, the plaintiff relies on *Connecticut National Bank* for the proposition that in the application of equitable subrogation, there is no requirement that the holder of the lien sought to be subrogated must have acted in any particular way, such as neglectfully, fraudulently or unfairly. In *Connecticut National Bank*, our Supreme Court held that equitable subrogation may be applied when the intervening lienholder would be otherwise unjustly enriched. Id., 399. In upholding the application of equitable subrogation, the court in *Connecticut National Bank* noted that "[i]t is not necessary, in order to create an obligation to make restitution or to compensate, that the party unjustly enriched should have been guilty of any tortious or fraudulent act." Id. Although such an act is not required for the application of equitable subrogation, it does not follow that the presence or absence of such an act is necessarily entirely irrelevant and inconsequential. Whether a party engages in or is complicit in wrongdoing is a factor that the court may consider, as the court did in the present case. The circumstances of the particular case determine whether equitable subrogation applies; see *Independence One Mortgage Corp.* v. *Katsaros,* supra, 43 Conn. App. 75–76 ("[t]he determination of what equity requires in a particular case, the balancing of the equities is a matter for the discretion of the trial court" [internal quotation marks omitted]); and the court must weigh the equities. We emphasize that the court exercises a broad discretion, and we cannot conclude that it unreasonably considered the absence of any neglectful, fraudulent or unfair behavior on the part of Mary Lou DelMastro.

Additionally, the plaintiff challenges the court's reliance on *Independence One Mortgage Corp.* v. *Katsaros,* supra, 43 Conn. App. 71. It claims that the distinction

between intervening lienholders and existing lienholders in that case lacks any basis in the case law. In that case, this court declined to apply equitable subrogation to an existing lienholder, reasoning, in part, that "[t]he doctrine of equitable subrogation is not intended as a means of circumventing the rights of existing lien holders who have properly recorded their mortgage instruments." Id., 74. The court in that case weighed the equities as it was required to do. Included in that analysis was the consideration that a defendant mortgagee was an existing lienholder who had properly recorded his mortgage. Id. We decline the plaintiff's invitation to abandon the well reasoned decision in *Independence One Mortgage Corp.*

Mary Lou DelMastro relies on *Equicredit Corp. of Connecticut* v. *Kasper*, supra, 122 Conn. App. 96, in which this court declined to apply equitable subrogation in light of the trial court's finding in that case that the plaintiff "was not ignorant of the defendants' lien, and its mistake in releasing its first mortgage was not based on any fraud by the defendants and did not result in any windfall to the defendants." The court in *Equicredit Corp. of Connecticut* determined that "[t]he plaintiff admitted that it had actual or constructive notice of the defendants' mortgage and was not ignorant of the defendants' lien. The [trial] court found that the defendants' conduct was not improper in any way. There was no evidence that the defendants ever intended or agreed to be subordinated to a new encumbrance on the property, and the defendants did not receive an undue advantage as the result of the plaintiff's mistake." Id., 98–99.

In the present case, Mary Lou DelMastro's lien was recorded prior to the August 6, 2007 refinancing. Although the plaintiff conducted a title search on or about May 30, 2007, the court made a finding that the plaintiff did not do a "bring down" after that date. An

updated search would have disclosed Mary Lou Del-
Mastro's mortgage, which had been recorded approxi-
mately seven weeks prior to the refinancing. Under
these circumstances, the plaintiff was not ignorant of
Mary Lou DelMastro's lien; regardless of whether there
was a lack of actual notice, the plaintiff had constructive
notice because the lien was recorded. See *Equicredit
Corp. of Connecticut* v. *Kasper*, supra, 122 Conn. App.
98 (noting that plaintiff admitted it had actual or con-
structive notice of defendants' mortgage and was not
ignorant of lien). We likewise do not conclude that
Mary Lou DelMastro received "an undue advantage"
or inequitable windfall. See id., 98–99. Although the
plaintiff asserts that Mary Lou DelMastro "knew that
she was obtaining a second mortgage and is now seek-
ing to obtain a windfall by claiming that her mortgage
is a first mortgage on the [p]roperty," the court found
that although she was aware of the $650,000 mortgage
and of the fact that her mortgage was subordinate to
it, she was unaware of the subsequent $749,999 mort-
gage and never consented to subordinating her mort-
gage to it. Therefore, we conclude that the court did
not abuse its discretion by declining to apply equita-
ble subrogation.[4]

---

[4] The plaintiff argues that the reasoning underlying *Connecticut National
Bank* v. *Chapman*, supra, 153 Conn. 393, applies and that *Equicredit Corp.
of Connecticut* v. *Kasper*, supra, 122 Conn. App. 94, is inconsistent with
*Connecticut National Bank*. Although the factual scenarios are similar, there
are procedural and substantive distinctions. Notably, from a procedural
standpoint, the plaintiff in *Connecticut National Bank* sought in the trial
court to reinstate its original mortgage and to foreclose the original mortgage,
to which the intervening mortgagee had been subject until its inadvertent
release. In the present case, the plaintiff sought to foreclose its second
mortgage, to which the intervening mortgagee had never been subject. The
court in *Connecticut National Bank* noted that the bank, although not
appreciating the intervenor's mortgage, which it should have done, was able
to gain priority over the innocent intervenor. Additionally, in *Connecticut
National Bank*, the court held that failure to apply equitable subrogation
would have resulted in unjust enrichment of the intervening lienholder, who
would have held the property free and clear of any encumbrances because
the foreclosure action would have foreclosed the plaintiff's subsequent mort-

## II

The plaintiff next argues that general equitable principles dictate that the plaintiff's mortgage should be superior to Mary Lou DelMastro's mortgage. The plaintiff advances the argument that Mary Lou DelMastro "must have been aware of her son's various transactions with regard to [the] property" because of her relationship with her son, her role as bookkeeper in her son's businesses and the closing attorney's knowledge of the prior lien. The court explicitly found that Mary Lou DelMastro "was not shown to be complicit in any unethical or inappropriate behavior" and that "[t]here is no evidence that Mary Lou DelMastro was neglectful, fraudulent, confused or that she acted unfairly." The court heard the evidence, including testimony of an account specialist at Saxon Mortgage, Inc., the attorney who conducted the title search for the property in 2007, Francis DelMastro and Mary Lou DelMastro. "[T]he trial court is the sole arbiter of witness credibility." *Blum* v. *Blum*, 109 Conn. App. 316, 329, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008). The only legal support that the plaintiff offers for its argument that general equitable principles should apply is the legal principle that "foreclosure is an equitable proceeding and the court 'may examine all relevant factors to ensure that complete justice is done.'" There is no indication that the court incorrectly weighed the equities, and we decline to disturb the court's decision.

## III

The plaintiff finally argues that Mary Lou DelMastro's mortgage is void for lack of consideration. The plaintiff

---

gage and the plaintiff's first mortgage was mistakenly released. *Connecticut National Bank* v. *Chapman*, supra, 399. In contrast, in *Equicredit Corp. of Connecticut*, rather than being free and clear of encumbrances, the issue was the determination of the priorities of the relevant security interests. *Equicredit Corp. of Connecticut* v. *Kasper*, supra, 96. Relatively minor factual differences may, in the court's discretion, make a difference in the weighing of equities.

bases this argument on (1) the stipulated fact that Mary Lou DelMastro received no financial benefit from the mortgages that she granted to her son's business associate, which mortgages were the basis for Francis Del-Mastro's granting the $325,000 mortgage to Mary Lou DelMastro and (2) the stipulated fact that at the time that Mary Lou DelMastro obtained the $325,000 mortgage, she had not advanced or loaned any of the money secured by that mortgage. Implicit in the court's finding that Mary Lou DelMastro's lien had first priority was that her mortgage was supported by consideration.

"[C]onsideration is [t]hat which is bargained-for by the promisor and given in exchange for the promise by the promisee . . . . Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." (Internal quotation marks omitted). *General Electric Capital Corp.* v. *Transport Logistics Corp.*, 94 Conn. App. 541, 546–47, 893 A.2d 467 (2006). "The consideration does not necessarily have to move from the mortgagee to the mortgagor." *Molk* v. *Micklewright*, 151 Conn. 606, 609, 201 A.2d 183 (1964). "Whether an agreement is supported by consideration is a factual inquiry reserved for the trier of fact and subject to review under the clearly erroneous standard." (Internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 442, 927 A.2d 843 (2007). The conclusion drawn from the facts so found, i.e., whether a particular set of facts constitute consideration in the particular circumstances, is a question of law; see *Town Bank & Trust Co.* v. *Benson*, 176 Conn. 304, 307–308, 407 A.2d 971 (1978); and accordingly is subject to plenary review. See *Santoro* v. *Santoro*, 132 Conn. App. 41, 47, 31 A.3d 62 (2011).

It is undisputed that Mary Lou DelMastro did not receive a financial benefit from the mortgages and that she "asserts that she received the benefit of trying to

help her son." Significantly, she also incurred a detriment by assuming the role of guarantor to the mortgage. Indeed, the court found that "[u]ltimately, with [her son's business associate] demanding payment from her as guarantor, she was forced to put a mortgage on her Wethersfield home and liquidate her own savings . . . ." Mary Lou DelMastro was, therefore, obligated to secure Francis DelMastro's debt, and the court properly treated her mortgage from Francis DelMastro as enforceable.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.